(No. 51308.—

PHILLIP W. BAILEY *et al.*, Appellants, v. RAYMOND TIMPONE *et al.* (Raymond Timpone, Indiv. and as Ex'r, Appellee).

*Opinion filed May 18, 1979.*

John T. Phipps, of Phipps & Evans, of Champaign, for appellants.

Winkelmann and Winkelmann, of Urbana, for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiffs are lessees under a lease dated August 31, 1974, and assigned to them effective February 24, 1975. At the end of 1975, plaintiffs gave notice of the exercise of their option to renew the lease for 10 years. Under the terms of the lease the determination of the amount of rent to be paid on renewal was submitted to binding arbitration. The issue, as presented by the parties, is whether the income on which plaintiffs' rent is to be calculated includes funds received or charges added to prices on account of plaintiffs' tax liability under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 440 to 453). On motion of plaintiffs, the circuit court of Champaign County entered an order, consistent with the expressed understanding of a majority of the arbitrators, that funds collected for payment of the retailers' occupation tax should not be included in calculating the percentage rent. The appellate court, with one justice

dissenting, reversed and remanded in a Rule 23 order (58 Ill. 2d R. 23). (61 Ill. App. 3d 1111.) We allowed plaintiffs' petition for leave to appeal.

Because the parties could not agree on the amount of rent to be paid on renewal, arbitration, as authorized by the lease, had become necessary. Pursuant to the terms of the lease, each party chose one arbitrator. They in turn were to jointly choose a third, but since they were unable to do so, the circuit court, on motion of plaintiffs as provided by the lease, appointed a neutral arbitrator. The arbitrators were to be "qualified by recent experience in dealing with rental properties in the Champaign Urbana area" and were to be either "licensed real estate brokers a substantial part of whose business involves the sale or lease of commercial property" or "experienced appraisers, a substantial part of whose business consists of fixing rental values of commercial real estate."

The lease expressly provided that "[t]he decision of the majority of the arbitrators shall be final, conclusive, and binding on the parties with respect to the rental for the extended term, except for fraud." The only specific guidance the lease gave concerning the amount of rent to be paid on renewal was the establishment of a minimum rent of $1,500 per month.

As directed, the arbitrators met and, following a presentation by the parties' arbitrators of their conclusions and an open discussion "of all factors considered relevant to the estimation of the fair cash rental value of the premises," reached a unanimous conclusion as to the rent on renewal. The percentage rent was set at 7% of "all Gross Income, from the premises, over and in excess of $300,000.00 annually," with a minimum of $2,500 monthly. The neutral arbitrator reported to counsel for both parties that the original rent provision had been thus altered but that the remainder of the lease was unchanged. Under the original lease, rent had been set at 6%

of the "total gross income from the premises in excess of $200,000 annually," and the minimum had been $1,500.

On May 31, 1977, plaintiffs filed a document entitled "Petition for Clarification of Arbitrators' Report" in which they asked the court to refer to the arbitrators the question of the meaning of the term "all Gross Income" as used in their report. Plaintiffs set forth defendants' contention that "all Gross Income" included the amounts plaintiffs added to prices for the retailers' occupation tax and defendants' contention that plaintiffs are therefore liable to them for 7% of those tax monies collected. Plaintiffs alleged that "Gross Income" does not include tax monies collected and passed directly to the State. Defendants filed an answer denying that the matter should be submitted to the arbitrators and asking the court to enter an order interpreting the language used by the arbitrators in fixing the percentage rent. The record does not indicate that the court took any action at this time.

On September 14, 1977, plaintiffs filed a pleading entitled "Motion to Construe Lease According to Arbitrators' Report" in which they asked the court to enter an order, consistent with the determination of the arbitrators, as to the meaning of the term "Gross Income, from the premises." Attached to the motion were letters to counsel from plaintiffs' arbitrator and the neutral arbitrator indicating that the term did not include monies collected for the retailers' occupation tax. The letter from the neutral arbitrator indicated that defendants' arbitrator was not available. The defendants filed no written response.

The letter from the neutral arbitrator stated that, when the arbitrators met to set the fair cash rental value of the premises on renewal of the lease, they did not discuss the meaning of the term "all Gross Income, from the premises." The letter stated that similar leases typically excluded sales tax collected from the gross receipts on which rent is calculated and concluded that such tax is not

income to the lessee "from the premises" and should therefore be excluded from the "Gross Income" to which the percentage rate should apply. Plaintiffs' arbitrator also indicated that the definition of the term "Gross Income" was not discussed when the question of rent on renewal of the lease was arbitrated but concluded, based upon his experience with percentage leases, that amounts collected for sales tax should not be included in the gross sales figure on which the percentage rent should be calculated.

Based on the arguments of counsel, the pleadings, and the arbitrators' letters attached as exhibits, the trial court concluded that "Gross Income" did not include amounts collected from customers to cover plaintiffs' liability under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 440 to 453). It further ordered defendants to credit against subsequent monthly rental charges the sum of $1,773.57, previously paid by plaintiffs on demand by defendants for rental payments calculated on the basis of income including amounts collected for the retailers' occupation tax. The appellate court reversed on the basis of its own construction of the term "Gross Income, from the premises," and remanded for proceedings not inconsistent with the views expressed in the opinion; presumably the trial court was to calculate the additional rent plaintiffs owed. We reverse.

The issue here, as we see it, concerns the role the court should play in interpreting the rent provision set by the arbitrators. The construction of legal terminology used in the lease is not at issue since the arbitrators' binding determination of the rent on renewal of the lease has, by agreement of the parties, replaced the original rent provision. The lease agreement placed no restrictions on the language the arbitrators were to use in fixing the fair cash rental value of the premises on renewal of the lease and directed only that the rent on renewal not be less than $1,500 per month.

We hold first that the judicial role in interpreting the arbitrators' rental determination here should be limited in a manner analogous to the statutorily constrained role the courts may play in reviewing arbitration awards under the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, pars. 101 to 123). The Act is not directly applicable since the lease did not technically call for arbitration in that it made no provision for a quasi-judicial determination of any dispute concerning rent on renewal, but called instead for an "appraisement," an application of the arbitrators' skill and knowledge to determine the fair cash rental value of the premises (*Norton v. Gale* (1880), 95 Ill. 533, 543; *Pearson v. Sanderson* (1889), 128 Ill. 88, 93-94; *Sebree v. Board of Education* (1912), 254 Ill. 438, 446). Nonetheless, the salutary purposes for permitting an informal mechanism to resolve private disputes finally and expeditiously are served here by limiting judicial intercession in the decision of the arbitrators. We hold therefore that the proper role for the courts here was to enter an order consistent with the meaning a majority of the arbitrators attached to the term "Gross Income." When a question arose concerning the meaning of the term "Gross Income" as used by the arbitrators, they, rather than the courts, were entitled to clarify the term in order to complete the function which the parties had assigned to them: to finally and conclusively establish the rent. See *La Vale Plaza, Inc. v. R. S. Noonan, Inc.* (3d Cir. 1967), 378 F.2d 569, 573, 37 A.L.R.3d 189, 196 (applying Pennsylvania law).

This court has long approved lease agreements to submit questions of valuation to appraisement or arbitration and has refused to interfere with the arbitrators' valuation absent fraud or mistake, even though the agreements were not technically classified as arbitration agreements and were not governed by all the rules applicable to arbitration. (See, *e.g., Norton v. Gale* (1880), 95 Ill. 533, 540-41; *Sebree v. Board of Education* (1912),

254 Ill. 438, 446.) The Supreme Court of Arizona too has affirmed the principle that the scope of review with respect to agreements such as the one here should be no broader than that which applies to arbitrations. Although such agreements may call for less formal proceedings than arbitrations, "both provide a contractual method for settling questions in a less complicated and expensive manner than through court adjudication. *** [W]hen, as here, parties agree to have value affixed by an appraisal, they must abide by their own agreement ***." *Hirt v. Hervey* (1978), 118 Ariz. 543, 545, 578 P.2d 624, 626.

The parties here agreed that the arbitrators were to have binding authority to conclusively and finally establish the fair cash rental value of the premises through the exercise of their expertise in real estate matters. We conclude that the trial court properly deferred to the meaning attached to the term "Gross Income" by a majority of the arbitrators and properly entered an order in accordance with the arbitrators' understanding of the term; the appellate court erred in interposing its own determination of the meaning of "Gross Income." Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*