KERRY HANKE, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, Indiv. and on Behalf of Similarly Situated AIG Entities, Defendant-Appellant.

Fifth District   No. 5—01—0919

Opinion filed December 26, 2002.

Robert E. Gillespie, William P. Hardy, and Andrew M. Ramage, all of Hinshaw & Culbertson, of Springfield, and John L. Gilbert, of Hinshaw & Culbertson, of Belleville, for appellant.

Paul M. Weiss, Phillip A. Bock, and Tod A. Lewis, all of Freed & Weiss, of Chicago, and L. Thomas Lakin, Bradley M. Lakin, Jeffrey A. Millar, and Gail G. Renshaw, all of Lakin Law Firm, P.C., of Wood River, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:
Kerry Hanke (plaintiff) filed a class action lawsuit against American International South Insurance Company (defendant) and alleged breach of contract and fraud claims. Plaintiff accuses defendant of engaging in a fraudulent scheme that included defendant contract-

ing with third-party vendors to provide defendant with biased, below-market estimates of total-loss-vehicle values. A vehicle is declared a total loss if the cost to repair exceeds the actual cash value of the vehicle. Plaintiff claims that defendant used these estimates, which were arrived at by using valuation reports generated by a computer software program that systematically undervalued the actual cash value of total-loss vehicles, to defraud its insureds in connection with the insureds' claims for the total loss of their vehicles. Plaintiff charges defendant with intentionally reducing its overall total-loss claims pay-outs at the expense of its insureds by using these biased reports, which at first blush appear independent and unbiased. According to plaintiff, defendant relies on these reports to demonstrate the purported "reasonableness" of what it determines to be the actual cash value of the totaled vehicle so that the insureds either will not challenge the valuation amount or will settle for an amount greater than the valuation but less than the actual cash value of the vehicle. Plaintiff further alleges that a part of the fraudulent scheme includes a policy provision which requires the parties to submit to an appraisal if requested by either the insured or the insurer.

Defendant filed a motion to compel an appraisal prior to proceeding with the lawsuit. Defendant argued that plaintiff's policy contains both an appraisal provision and a provision stating that the insured must satisfy all the conditions of the policy prior to filing suit against defendant. The appraisal provision contained in the policy allows each side to select an appraiser who, in turn, selects an impartial umpire. If the appraisers fail to agree on the amount of loss, they submit their differences to the umpire. A decision agreed to by any two of the three is then binding. The provision further provides that each party must pay its appraiser and bear the expenses of the appraisal and the umpire equally. The trial court denied defendant's motion to compel an appraisal but stated in its order that defendant could perform an appraisal for discovery purposes. Defendant filed a notice of interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). The issue we are asked to address is whether the trial court erred in denying defendant's motion to compel an appraisal. We affirm.

## BACKGROUND

Plaintiff purchased an automobile insurance policy from defendant. In January 2001 plaintiff was involved in an automobile accident in Madison County while driving his 1991 Dodge Ram truck. Plaintiff submitted a claim for property damage to defendant. Defendant declared plaintiff's vehicle a total loss and valued the vehicle at $4,500

based upon a valuation obtained from ADP Claims Solution Group. Plaintiff challenged defendant's valuation on the basis that it was below the actual cash value of the vehicle. Plaintiff informed the claims adjuster assigned to the case that the National Automobile Dealers' Association (NADA) website valued his vehicle at $6,300. The claims adjuster responded by telling plaintiff that she had found NADA valuations of $4,200 for trade-in value and $5,850 for retail value. Plaintiff continued to dispute defendant's valuation and told the claims adjuster that he had put a new engine in his truck. The claims adjuster told plaintiff that he could get an appraisal based upon the appraisal provision set forth in the policy, which provides as follows:

"APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally."

Plaintiff responded by sending the claims adjuster documentation supporting his claim that defendant's valuation was too low.

On February 5, 2001, the claims adjuster received from plaintiff a copy of a Kelley Blue Book valuation in the amount of $6,805, a copy of a repair bill from Don Hemann (who had installed a new engine in plaintiff's truck), and a copy of a repair bill from a muffler shop (for the installation of heavy-duty shock absorbers on plaintiff's truck). The claims adjuster did not believe that these documents justified an increase in the valuation, and plaintiff was again offered the original settlement amount.

Plaintiff contacted a friend, John Gibbons, who is a lawyer. Gibbons is not a participant in the instant lawsuit. Gibbons sent the claims adjuster a letter on behalf of plaintiff, notifying defendant that the offer was insufficient. The claim was reassigned to another adjuster who is no longer employed by defendant. However, it is clear from the record that the reassignment failed to resolve the matter. Plaintiff ultimately retained the attorneys of record in this case, and on May 15, 2001, plaintiff filed a class action on behalf of himself and others similarly situated.

The original complaint and the first amended complaint, filed on September 5, 2001, contained the following counts: count I, breach of contract; count II, statutory fraud; and count III, common law fraud.

On November 16, 2001, plaintiff filed a second amended complaint, which left out count III. The gist of the claims of the class action, as previously set forth, is that defendant is engaged in a fraudulent scheme whereby it uses biased valuation reports to undervalue the actual cash value of vehicles which are declared total losses and consistently underpays total-loss claims, thereby cheating its insureds and increasing its own profits.

On September 17, 2001, defendant sent a new proposal of settlement to Gibbons, who was not the attorney of record, offering $5,850. Defendant also informed plaintiff that if he refused to settle, defendant would invoke the appraisal provision. The letter requested that plaintiff respond by September 28, 2001. Plaintiff did not respond. On October 5, 2001, defendant filed a demand for an appraisal and a motion to compel an appraisal and stay further court proceedings. On November 2, 2001, after briefing and argument, the trial court entered an order denying defendant's motion to compel an appraisal and stay further court proceedings. Defendant filed a timely notice of interlocutory appeal.

## ANALYSIS

■ We first address the standard of review to be applied in the case at bar. Defendant argues that the standard is *de novo* because the instant case requires us to construe an insurance policy. Plaintiff, on the other hand, contends that the standard of review to be applied in an interlocutory appeal is whether there is a sufficient showing to sustain the trial court's order denying the relief sought. Both parties make legitimate arguments; however, after careful consideration, we find that the *de novo* standard of review is appropriate. See *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171. Like *Travis*, the only question before the trial court was whether the insurance contract contained a mandatory appraisal clause that applied to the controversy at issue between the parties. This is a determination made as a matter of law subject to *de novo* review.

Defendant contends that the plain and unambiguous language of the insurance policy requires plaintiff to submit to an appraisal. Defendant insists that the damages claimed by plaintiff relate solely to a disagreement regarding the actual cash value of plaintiff's vehicle and that, therefore, the appraisal clause relates directly to this dispute. Defendant relies on *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 561 N.E.2d 116 (1990), in support of its proposition that the trial court erred in refusing to enforce the appraisal clause.

In *Beard,* the plaintiff sought to recover under her fire insurance policy with the defendant after her rental house was totally destroyed by a fire. 203 Ill. App. 3d at 726, 561 N.E.2d at 117. The policy contained an appraisal clause similar to the one before us. *Beard,* 203 Ill. App. 3d at 726, 561 N.E.2d at 117. The defendant filed a motion to compel an appraisal, which the trial court denied on the basis that because the house was a total loss, the appraisal provision did not apply because there was nothing left to appraise. *Beard,* 203 Ill. App. 3d at 727, 561 N.E.2d at 117-18. On appeal, this court concluded that there was no ambiguity in the insurance policy and that, therefore, no matter how difficult it might be to appraise a total loss, an appraisal had to be conducted. *Beard,* 203 Ill. App. 3d at 729, 561 N.E.2d at 119. We find that *Beard* is distinguishable from the case at bar because it does not address the heart of the issue raised by plaintiff's complaint herein.

Contrary to defendant's assertions, the analysis of the question presented by this appeal does not end with whether or not an appraisal clause exists. A court must also determine whether the parties' dispute is covered by the particular clause. *Lundy v. Farmers Group, Inc.,* 322 Ill. App. 3d 214, 219, 750 N.E.2d 314, 318 (2001). In *Lundy,* the plaintiff filed a class action lawsuit against her insurer after her car was damaged in a collision. The plaintiff alleged that the insurer had acted fraudulently in requiring its authorized repair shops to use inferior replacement parts rather than more expensive original equipment manufacturer parts on automobiles that were covered under its insurance policies. The plaintiff's second amended complaint included claims on behalf of herself and the alleged class members and alleged, *inter alia,* fraud and breach of contract. *Lundy,* 322 Ill. App. 3d at 217, 750 N.E.2d at 317. The insurance contract in issue had an appraisal clause that was nearly identical to the one before us. The insurer sought to enforce the clause. *Lundy,* 322 Ill. App. 3d at 216, 750 N.E.2d at 316-17. In considering the plaintiff's fraud claims and the insurer's appraisal request, the Second District specifically stated:

> "[T]he appraisal process provided for in the policy was designed solely to resolve disputes over the amount of the loss. Farmers argues that the amount of the loss is the threshold issue for each of plaintiff's claims, but that argument oversimplifies the issues raised in plaintiff's second amended complaint. The resolution of plaintiff's claims will require a determination of whether Farmers misrepresented to its policyholders the quality of repair parts that Farmers would pay for under its policies. This question requires an interpretation of the policy language, in particular, the phrase 'like kind and quality.' These issues cannot be resolved through the ap-

praisal process. Consequently, we agree with the trial court that the issues plaintiff raised in her second amended complaint were not subject to the appraisal clause." *Lundy*, 322 Ill. App. 3d at 219, 750 N.E.2d at 319.

Likewise, we find that the instant case presents much more than a disagreement between the parties concerning the actual cash value of plaintiff's truck.

Here, plaintiff contends that defendant is engaged in a fraudulent scheme to undervalue its insureds' vehicles that are declared a total loss, in order to increase its own profits. Plaintiff's claims focus upon whether defendant defrauded him and thereby breached the terms of the policy. Plaintiff's second amended complaint specifically focuses upon the appraisal provision and makes this claim: "[Defendant] inserts the appraisal provision into its policy as one way to effectuate its wrongful scheme, because AIG knows that few (if any) insureds will (or can) pay the money required to obtain an appraisal of a total loss claim, particularly because the way AIG has devised the scheme, the disputed amount is virtually always worth less than the appraisal costs." The second amended complaint goes on to allege, "The appraisal clause is used to prevent plaintiff and the class from effectively vindicating their statutory and common law causes of action." This language clearly establishes that plaintiff's second amended complaint presents much more than a disagreement between the parties concerning the actual cash value of the vehicle.

Defendant's argument that the instant case is nothing more than a disagreement between the parties concerning the value of plaintiff's loss misrepresents this controversy. If we followed defendant's logic, it would mean that plaintiff would have to go through the allegedly fraudulent appraisal process, expending more money than he could ever hope to recover, in order to file any complaint alleging fraud in that very same process. The damages in this case cannot be determined by invoking the appraisal provision, because plaintiff claims that the appraisal provision is a part of the fraud, in that the appraisal provision requires plaintiff to pay for an appraisal and split the cost of an umpire in order to recover an amount of money less than the appraisal process would cost. The issues raised in the second amended complaint involve much more than the actual cash value of plaintiff's truck and cannot be resolved through the appraisal process.

We are well aware of and agree with the public policy of the State of Illinois favoring the conservation of judicial resources through arbitration or appraisal. See *Lundy*, 322 Ill. App. 3d at 219, 750 N.E.2d at 319, citing *J. Wise Smith & Associates, Inc. v. Nationwide Mutual Insurance Co.*, 925 F. Supp. 528, 530 n.8 (W.D. Tenn. 1995). However,

we do not believe that the mere existence of an appraisal clause is enough to compel an appraisal under the facts presented here. None of the Illinois cases cited by defendant present facts analogous to the facts before us. Instead, all of the cases cited by defendant center upon an issue that could be resolved by determining an amount or value.

For example, *Bailey v. Timpone*, 75 Ill. 2d 539, 389 N.E.2d 1193 (1979), which is relied upon by defendant, involved a dispute over the amount of rent to be paid on the renewal of a lease. The parties in that case agreed that if they could not concur on the amount of rent to be paid upon renewal, the issue would be submitted to binding arbitration. *Bailey*, 75 Ill. 2d at 541, 389 N.E.2d at 1194. The specific issue in that case concerned the role a court should play in interpreting the rent provision set by the arbitrators and involved a determination of the term "gross income" as used in the arbitration provision of the lease. The court concluded that the arbitrators were authorized to clarify the term. Since the parties agreed that the arbitrators had "binding authority to conclusively and finally establish the fair cash rental value of the premises," it was proper for the trial court to defer to the meaning the arbitrators ascribed to the terms they used. *Bailey*, 75 Ill. 2d at 546, 389 N.E.2d at 1196. The *Bailey* court stated in pertinent part:

> "This court has long approved lease agreements to submit questions of valuation to appraisement or arbitration and has refused to interfere with the arbitrators' valuation *absent fraud* or mistake, even though the agreements were not technically classified as arbitration agreements and were not governed by all the rules applicable to arbitration." (Emphasis added.) *Bailey*, 75 Ill. 2d at 545, 389 N.E.2d at 1196.

The case before us is clearly distinguishable because it specifically involves fraud allegations.

■ The instant lawsuit presents the classic class action lawsuit in which those allegedly injured would be economically prohibited from ever vindicating their rights in separate lawsuits. If plaintiff's fraud allegations cannot be proven, then the appraisal process would certainly be appropriate. Until that time, we find that the trial court did not err in finding that an appraisal was not a condition precedent to litigating the claims in this lawsuit. Moreover, we note that the trial court did not deprive defendant of its right to obtain an appraisal. The trial court specifically stated in its order that defendant could get an appraisal as a part of the discovery process. Under these circumstances, we find that the trial court's order denying defendant's motion to compel an appraisal and stay further court proceedings was correct.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of

Madison County is hereby affirmed. The cause is remanded for further proceedings consistent with this opinion.

Affirmed; cause remanded.

HOPKINS, P.J., and WELCH, J., concur.