OLA AUSTIN, Plaintiff-Appellee, v. ILLINOIS FARMERS INSURANCE COMPANY, Defendant-Appellant.

Fifth District    No. 5—03—0579

Opinion filed August 17, 2004.

Gordon R. Broom, Troy A. Bozarth, and Regina L.L. Wells, all of Burroughs, Hepler, Broom, MacDonald, Hebrank & True, L.L.P., of Edwardsville, and Marci A. Eisenstein and Aphrodite Kokolis, both of Schiff, Hardin & Waite, of Chicago, for appellant.

Paul M. Weiss, of Freed & Weiss, L.L.C., and Michael J. Freed, of Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., both of Chicago, Patrick G. Johnston, of Johnston Law Offices, P.C., of Edwardsville, and Gail G. Renshaw, L. Thomas Lakin, Bradley M. Lakin, and Jeffrey A.J. Millar, all of Lakin Law Firm, of Wood River, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

This appeal stems from the trial court's August 21, 2003, order denying the defendant's motion to compel arbitration and to stay the plaintiff's claims. The arbitration provision at issue provides as follows:

> "If an **insured person** and we do not agree[ ] (1) that the person is entitled to recover for medical services, (2) that the medical services are a result of a covered **accident**, or (3) as to the nature, frequency, or cost of the medical services, either that person or we may demand that the issue be determined by arbitration.
>
> \*\*\*
>
> The arbitrator shall determine (1) if the medical services are as a result of a covered **accident**, (2) if the medical services incurred are **reasonable expenses** and **necessary medical services**, and (3) the amount of any payment under this part as determined by this policy."

The trial court, ruling from the bench, essentially concluded that the arbitration clause at issue was unenforceable because the claims raised by the plaintiff were different from those referenced in the arbitration clause. The court also found that arbitration would be cost-prohibitive. The defendant's appeal is before this court pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), because the motion that was denied sought injunctive relief.

## FACTS

On December 23, 1996, Ola Austin (the plaintiff) was in a motor vehicle accident in which she sustained bodily injuries. At the time of the accident, the plaintiff was insured under an automobile policy issued by defendant Illinois Farmers Insurance Company (Farmers). The standard policy contained a medical-payments-coverage section. She sought and received chiropractic treatment, beginning on January 13, 1997. For some reason, her chiropractic physician did not include an initial examination and diagnosis in the plaintiff's records. The first mention of the plaintiff's condition did not occur until March 17, 1997, at which time he diagnosed her with a mild cervical sprain/strain. The plaintiff was seen by her chiropractor a total of 61 times over the course of 71 weeks. She turned the associated medical bills in to Farmers for payment pursuant to the medical-payments coverage.

The medical-payments-coverage section of the policy stated that Farmers would pay "reasonable" expenses for "necessary" medical services furnished within two years from the date of an accident "arising from" the use of the insured automobile that resulted in "bodily injury." "Necessary medical services" are defined as "medical services which are usual and customary for treatment of the injury, including the number or duration of treatments, in the county in which those services are provided," and which are "necessary for the treatment of the injury." The policy defines "reasonable expenses" as those that are "usual and customary for **necessary medical services** in the county in which those services are provided."

Additionally, the policy provides that Farmers has the authority to submit claims for medical expenses to outside evaluation services:

> "At our expense, we may employ or enter into contract with an independent medical consultant(s) to assist us in determining whether all or any portion of any claim is for **reasonable expenses** or **necessary medical services**. We may submit to such consultant any medical records, reports, bills, statements, results of tests and examinations, and any other documentation or material we deem appropriate."

Pursuant to that provision, Farmers submitted the plaintiff's medical file to Terrance Flanagan, D.C. Dr. Flanagan found problems with

the documentation of the plaintiff's diagnosis and care. Specifically, Dr. Flanagan noted that given the diagnosis, the plaintiff's course of care should only have endured for about one month and would not have required treatment as frequent as that the plaintiff received. Dr. Flanagan also found fault with ongoing documentation in the plaintiff's progress record. He concluded that the plaintiff's injury should have been resolved on or about March 10, 1997, and that ongoing care was more like maintenance in nature. Maintenance type of care would not "be considered essential to treatment of the injuries" the plaintiff had received. Dr. Flanagan recommended that Farmers deny the charges for the plaintiff's care after March 10, 1997.

Dr. Flanagan did not examine the plaintiff and based his opinions solely upon the records review he was hired to perform.

As a result of Dr. Flanagan's recommendations, Farmers declined to reimburse the plaintiff for any expenses for treatment after March 10, 1997.

Nearly three years later, the plaintiff filed suit against Farmers on behalf of herself and a putative class of insureds. Counts I and II were for breach of contract and alleged that Farmers failed to pay all the plaintiff's "reasonable and necessary" medical expenses. The plaintiff alleges that Farmers hired a biased medical reviewer and that, as a direct result of this biased review, not all the plaintiff's medical bills had been properly reimbursed. Count III of her complaint alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2000)). She claimed compensatory damages of $2,852, representing the amount of medical expenses that Farmers refused to pay.

In response to the complaint, Farmers gave the plaintiff written notice of its intent to invoke the binding arbitration clause contained within its insurance policy. Farmers filed a motion to compel arbitration. In addition to the arbitration clause, Farmers' policy also indicated that no legal action could be taken against it "unless there is full compliance with all the terms of this policy."

Thereafter, the plaintiff amended her complaint, alleging that the arbitration provision was unenforceable because it was a part of an alleged fraudulent scheme and because it could be used to prevent the plaintiff from effectively vindicating her statutory and common law claims since the costs of arbitration would likely exceed the disputed amount.

On August 21, 2003, the circuit court held its hearing on Farmers' motion to compel arbitration. At the conclusion of the hearing, the trial judge denied the motion. The court's written order does not indicate its reasoning. At the conclusion of the hearing, the trial court stated as follows:

"[I]t seems to me that the complaint clearly sets out this as being the wrong, that a party is injured, has medical bills. He first submits those to the company for payment. In that initial process the company uses these biased reports as part of the fraudulent scheme to say that [']we are not going to pay all of your bills, we are going to pay some amount less, which is some amount less than what you've asked for.['] Then as part of the scheme they've put in the arbitration clause, and the company now says[,] ['][F]or you to determine this as to who is right and who is wrong, you must go to arbitration, but the way we have set this up, the arbitration will cost you more than what the initial dispute is.['] I think that's four square with the other cases. The motion to compel arbitration is denied."[1]

Farmers appeals from this decision.

## STANDARD OF REVIEW

■ On appeal from a denial of a motion to compel arbitration without an evidentiary hearing, the standard of review is *de novo*. *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174, 782 N.E.2d 322, 325 (2002).

## LAW AND ANALYSIS

### Arbitration in General

In 1925, Congress enacted the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2000)) " 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts[ ] and to place arbitration agreements upon the same footing as other contracts.' " *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 384, 808 N.E.2d 957, 962 (2004), quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991). The FAA provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000).

Section 4 of the FAA provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitra-

---

[1]The court's reference to "other cases" means *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 782 N.E.2d 322 (2002), and *Hanke v. American International South Insurance Co.*, 335 Ill. App. 3d 1164, 782 N.E.2d 328 (2002).

tion agreement. 9 U.S.C. § 4 (2000). Generally speaking, the arbitration agreement's own language defines the scope of disputes subject to arbitration. See *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 131 L. Ed. 2d 76, 84, 115 S. Ct. 1212, 1216 (1995); *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289, 151 L. Ed. 2d 755, 766, 122 S. Ct. 754, 762 (2002). "While ambiguities in the language of the agreement should be resolved in favor of arbitration [citation], we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House, Inc.*, 534 U.S. at 294, 151 L. Ed. 2d at 769, 122 S. Ct. at 764.

■ In *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 134 L. Ed. 2d 902, 116 S. Ct. 1652 (1996), the United States Supreme Court explained the preemptive effect of the FAA:

> " '[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of § 2].' [Citation.]" (Emphasis in original.) *Doctor's Associates, Inc.*, 517 U.S. at 685, 134 L. Ed. 2d at 907, 116 S. Ct. at 1655.

While the Supreme Court stresses that the FAA manifests a federal policy favoring the enforcement of valid arbitration agreements (*Gilmer*, 500 U.S. at 24-25, 114 L. Ed. 2d at 36, 111 S. Ct. at 1651), the Court has been equally clear that a party can be forced into arbitration only if he or she has in fact entered into a valid, enforceable contract waiving his or her right to a judicial forum. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 655, 106 S. Ct. 1415, 1418 (1986). Whether the parties actually agreed to arbitrate is determined pursuant to state-law contract principles. *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 758-59 (7th Cir. 2001); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). The Supreme Court confirmed that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." *Doctor's Associates, Inc.*, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656.

More recently, the United States Supreme Court decided *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003). The Supreme Court addressed the South Carolina state court decision ordering class arbitration in the context of an arbitration agreement that was silent about whether class arbitration

was forbidden or allowed, holding that whether the agreement allowed or forbade class arbitration was a question for the arbitrator to decide. *Green Tree Financial Corp.*, 539 U.S. at 451, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. Certain limited arbitration matters, however, are to be decided by the court. Those matters "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Financial Corp.*, 539 U.S. at 452, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407.

## Arbitrability of Claims at Issue

Generally speaking, the matter of whether or not a type of claim can be arbitrated is a question for the courts—not for the arbitrator. *Green Tree Financial Corp.*, 539 U.S. at 452, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. The courts can determine the issue of arbitrability and compel arbitration when " 'the language of the arbitration agreement is clear[ ] and it is apparent that the dispute sought to be arbitrated falls within the scope of the arbitration clause.' " *Salsitz v. Kreiss*, 198 Ill. 2d 1, 9, 761 N.E.2d 724, 728 (2001), quoting *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445, 530 N.E.2d 439, 443 (1988). Similarly, if it is clear that the claim is not subject to arbitration, then the trial court should not hesitate to conclude that arbitration cannot be compelled. " 'The paramount factor in determining the parties' intention is the scope of the arbitration clause in the contract.' " *Salsitz*, 198 Ill. 2d at 9, 761 N.E.2d at 728, quoting *Barr*, 124 Ill. 2d at 445, 530 N.E.2d at 443.

We turn to the arbitration issue in this case. The trial court refused to grant the motion to compel because the court concluded that the "fraudulent scheme" the plaintiff alleged in her amended complaint was not within the scope of Farmers' arbitration clause—and was thus not arbitrable. Farmers argues that the plaintiff's claims fall squarely within the terms of the arbitration clause.

The plaintiff's amended complaint is replete with allegations about "the scheme" in which Farmers engaged to keep medical-payments claims to a certain percentage or amount and how it utilized third-party reviewers to achieve this end. Only the third count of the complaint and its prefatory sections expressly refer to the scheme as being fraudulent in nature. The arbitration clause at issue clearly covers issues related to whether the insured is entitled to recover for medical services, whether the medical services were the result of a covered accident, or whether the nature, frequency, and cost of those medical services were appropriate. Because of the manner in which Farmers frames the issue, it argues that the plaintiff's claims clearly

fall within the scope of this clause. On its face, however, we disagree with Farmers in that matters related to whether the insurance company engaged in acts to purposefully reduce the amount it would eventually pay its insureds do not seem to be the same as determinations about the nature, frequency, or cost of the medical services—the concerns addressed by Dr. Flanagan in his review. If the plaintiff was simply disputing Dr. Flanagan's review, which resulted in a reduction in her applicable medical-payments coverage, then that matter would almost certainly be arbitrable. And if that was all that the plaintiff was disputing, then Farmers had an internal appellate process available to its insureds at no out-of-pocket expense.

Because the trial court implicitly relied upon two cases previously decided by this court in determining that the claims at issue were not arbitrable, we address each case in turn.

In *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 782 N.E.2d 322 (2002), we held that the allegations of the plaintiff's class action complaint went beyond what the relevant insurance policy arbitration clause covered. The plaintiff alleged a fraudulent scheme: the plaintiff claimed that the defendant insurance company contracted with an outside company to provide biased, below-market estimates of total-loss-vehicle values. *Travis*, 335 Ill. App. 3d at 1173, 782 N.E.2d at 324. The plaintiff alleged that by providing below-market estimates, the defendant engaged in conduct designed to defraud its insureds. The plaintiff also alleged that an integral part of the fraudulent scheme involved the arbitration clause, which required the parties to submit to an appraisal of the loss if requested by either party. The appraisal clause required each party to hire an appraiser and to split the costs of an umpire agreed upon by the two appraisers. The plaintiff alleged that because the amount by which the insureds' total-loss claims were underpaid would be less than the costs associated with this appraisal process, the insurance company knew that the insureds would forego the appraisal process and accept less than the actual cash value of the vehicle for their total-loss claims. The plaintiff filed her lawsuit, and the insurance company responded by demanding that the appraisal process be followed. The trial court denied this motion, finding that the breach-of-contract and fraud claims at issue did not fall within the scope of the appraisal clause and that therefore the plaintiff could not be compelled to submit those claims to an appraisal.

We began the analysis by stating, "[A]n appraisal clause is analogous to an arbitration clause and is enforceable in a court of law in the same manner as an arbitration clause." *Travis*, 335 Ill. App. 3d at 1174, 782 N.E.2d at 324, citing *Beard v. Mount Carroll Mutual Fire Insurance Co.*, 203 Ill. App. 3d 724, 727, 561 N.E.2d 116, 118 (1990).

The appraisal clause at issue provided, " 'If we and you do not agree on the amount of loss, either may demand an appraisal of the loss.' " *Travis*, 335 Ill. App. 3d at 1176, 782 N.E.2d at 326. We concluded that the complaint raised much more than a dispute over the amount of the loss and that the issues did not fall squarely within this appraisal clause. We based this conclusion on *Lundy v. Farmers Group, Inc.*, 322 Ill. App. 3d 214, 750 N.E.2d 314 (2001) (holding that the allegations of the plaintiff's complaint relative to the use of inferior replacement parts in motor vehicle repairs rather than manufacturers' parts involved misrepresentation claims and policy interpretation and were therefore outside the scope of the appraisal clause). Specifically, we found that because the plaintiff contended that the insurance company was engaged in a fraudulent scheme to undervalue insureds' total-loss vehicles in order to increase its own profits, the plaintiff's claims were focused upon fraud and a breach of the policy terms because of that fraud. *Travis*, 335 Ill. App. 3d at 1177, 782 N.E.2d at 327. We concluded that these types of claims presented more than a disagreement between the parties concerning the actual cash value of the vehicle and that therefore the dispute was not covered by the appraisal clause.

*Hanke v. American International South Insurance Co.*, 335 Ill. App. 3d 1164, 782 N.E.2d 328 (2002), was decided by this court two days after *Travis*. In *Hanke*, we were faced with a fairly similar fact pattern. The plaintiff accused the defendant insurance company of engaging in a fraudulent scheme by contracting with third-party vendors to undervalue a total-loss vehicle. *Hanke*, 335 Ill. App. 3d at 1165, 782 N.E.2d at 329. The plaintiff alleged that as a part of the fraudulent scheme, the insurance company required all the parties to submit to an appraisal process if the parties could not agree on the value of the loss. The appraisal process required each party to hire an appraiser and split the cost of a third umpire. The trial court denied the defendant insurance company's motion to compel that appraisal. As in *Travis*, we found that the allegations of the complaint exceeded the scope of the appraisal clause. *Hanke*, 335 Ill. App. 3d at 1169, 782 N.E.2d at 332. This court held that the insurance company's stance that the disagreement concerned only the value of the plaintiff's loss, and that therefore an appraisal was appropriate, misstated the controversy. We stated, "If we followed defendant's logic, it would mean that plaintiff would have to go through the allegedly fraudulent appraisal process, expending more money than he could ever hope to recover, in order to file any complaint alleging fraud in that very same process." *Hanke*, 335 Ill. App. 3d at 1169, 782 N.E.2d at 332. We further found that the damages could not be ascertained by way of an appraisal, because the plaintiff alleged that the appraisal process itself

was a part of the fraud. We concluded that an appraisal in this setting was inappropriate, and we affirmed the order of the trial court. *Hanke*, 335 Ill. App. 3d at 1170, 782 N.E.2d at 333.

■ Essentially, Farmers argues that because its clause is an arbitration clause, and not an appraisal clause, the trial court's reliance upon *Travis* and *Hanke* is misplaced. Contrary to Farmers' claims, we find that these two cases are analogous to the facts in this case. As we stated in *Travis*, appraisal clauses and arbitration clauses are analogous. The arbitration clause at issue is designed to address three specific disagreements about medical-payments coverage—whether the plaintiff is entitled to recover for medical services, whether the services were the result of a covered accident, and whether the nature, frequency, and costs of those services were appropriate. In her amended complaint, the plaintiff alleges that Farmers hired an allegedly independent medical reviewer for the purposes of slashing the amounts paid to its own insureds pursuant to the medical-payments coverage. The plaintiff alleges that by utilizing these medical reviewers, Farmers further increases its overall profits in denying the full amount of the benefits sought. She further alleges that the invocation of the arbitration clause was a part of the fraudulent scheme because it would serve to prevent her from effectively vindicating her statutory and common law claims.

As in *Travis* and *Hanke*, the allegations in the plaintiff's amended complaint go far beyond the scope of the disagreements covered in the arbitration clause. Whether or not Farmers is engaged in a fraudulent scheme designed to increase its profits and deny the full amount of the claims made by its insureds simply does not have anything to do with whether the medical services are covered, are a result of an accident, or are excessive in some respect. The plaintiff's allegations of a fraudulent scheme relate both to a consumer fraud claim and to a breach-of-contract claim in that if such a scheme is being utilized, the result is that the insureds are not reimbursed as promised in their contract of insurance.

On these bases, the trial court properly denied Farmers' motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County. The cause is remanded for further proceedings consistent with this opinion.

Affirmed; cause remanded.

HOPKINS and DONOVAN, JJ., concur.