(text box: 1) NO. 5-03-0290

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

CHARLOTTE BESS, )  Appeal from the 

)  Circuit Court of 

     Plaintiff-Appellee, )  St. Clair County.

)

)  No. 99-L-55A

)

DIRECTV, INC., )  Honorable

)  Robert P. LeChien,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE DONOVAN delivered the opinion of the court:

This appeal arises from an order of the circuit court of St. Clair County denying the motion of DirecTV, Inc. (DirecTV), to stay proceedings in a class action suit and to compel arbitration.  The motion was based upon the DirecTV "Customer Agreement" with plaintiff, Charlotte Bess.  That agreement recites that any claim asserted by either party against the other, if not resolved informally, "will be resolved only by binding arbitration," to be conducted under the commercial arbitration rules of the American Arbitration Association.  The court found the arbitration provision to be "substantively unconscionable and unenforceable" and denied DirecTV's motion to stay and to compel arbitration.  DirecTV filed a timely notice of interlocutory appeal.  We have jurisdiction over the instant appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)).  See 
Caudle v. Sears, Roebuck & Co.
, 245 Ill. App. 3d 959, 962, 614 N.E.2d 1312, 1315 (
1993).

Background

DirecTV provides television programming services via satellite to consumers throughout the nation.  To obtain these services, a potential DirecTV subscriber typically first purchases from an independent retailer the equipment necessary to receive a satellite signal.  The potential customer then calls DirecTV and selects one or more of DirecTV's programming packages.  DirecTV then activates the subscriber's service and mails the customer a copy of the parties' written contract, entitled "Customer Agreement" (Customer Agreement), along with his or her first bill.  The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions pursuant to which DirecTV provides its service.

On November 28, 1999, Bess activated her DirecTV satellite programming service.  The same day, DirecTV mailed to Bess a copy of the October 1999 Customer Agreement, along with her first billing statement.  The Customer Agreement sets forth the terms of the agreement between DirecTV and its customers, including that DirecTV will send Bess a billing statement once every 30 days, that payment of the outstanding balance is due in full each month, and that if Bess's payment is not received by DirecTV before her next statement is issued, she may be charged an administrative late fee of up to $5.  This administrative late fee is the subject of Bess's complaint.

The Customer Agreement contains informal and formal dispute-resolution clauses.  Under the informal dispute-resolution clause, paragraph 8(a), the complaining party must first notify the other of a claim at least 60 days in advance of starting any formal proceeding, so that an informal resolution of the claim can be attempted.  Paragraph 8 of the Customer Agreement provides that all disputes "relating to" the Customer Agreement or to DirecTV services not resolved informally are to be submitted to binding arbitration.  The arbitration provision, paragraph 8(b), states: 

"
Formal Resolution.
  Except as provided in Section 8(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.  The arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association that are in effect at the time the arbitration is initiated (referred to as the 'AAA Rules') and under the rules set forth in this Agreement.  If there is a conflict between the AAA Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern.  
ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.  
If you initiate the arbitration, you agree to pay a fee of $125 or, if less and you tell us in writing, the amount that you would pay to initiate a lawsuit against us in the appropriate court of law in your state.  We agree to pay any additional fee or deposit required by the American Arbitration Association in excess of your filing fee.  We also agree to pay the costs of the arbitration proceeding up to a maximum of one-half day (four hours) of hearings.  Other fees, such as attorney's fees, expenses of travel to the arbitration[,] and the costs of a proceeding that goes beyond one-half day[,] will be paid in accordance with the AAA Rules.  The arbitration will be held at a location within one hundred miles of your residence unless you and we both agree to another location." 

The Customer Agreement also specified the method by which Bess could accept or rejects its terms:

"
THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS REGARDING YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE.  IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF YOU AGREE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND, ACCORDINGLY, THEY WILL BE LEGALLY BINDING ON YOU.
" 

Bess did not cancel her service upon her receipt of the October 1999 Customer Agreement and, in fact, was still a DirecTV customer at the time of this appeal. 

On November 22, 2000, Bess filed her first amended complaint in the circuit court of St. Clair County.  Her complaint alleges that DirecTV violated Illinois law by charging its subscribers a $5 late fee when payments are not received on time.  The gist of Bess's complaint is that DirecTV's true costs for late-paying customers are far below that charged as a late fee.  Bess argues that DirecTV's practice constitutes unjust enrichment and violates both Illinois common law concerning liquidated damages and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et seq.
 (West 2000)).  

By letter dated December 4, 2000, DirecTV notified Bess that it intended to avail itself of the parties' contractual dispute-resolution clause.  
On December 7, 2000, DirecTV moved the court to compel arbitration and to stay Bess's action so that the arbitration contemplated by the parties' agreement could proceed.  On March 27, 2003, the court denied DirecTV's motion, concluding that the parties' arbitration agreement was unconscionable and unenforceable.  In support of its decision, the trial court relied on the California case of 
Szetela v. Discover Bank
, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (2002), which held that a provision in an arbitration agreement expressly prohibiting class actions violated public policy. 

The Federal Arbitration Act

Congress enacted the Federal Arbitration Act (FAA) (9 U.S.C. §1 
et seq.
 (2000)) in 1925 "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts[] and to place arbitration agreements upon the same footing as other contracts."  
Gilmer v. Interstate/Johnson Lane Corp.
, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 36, 111 S. Ct. 1647, 1651 (1991); see also
 Borowiec v. Gateway 2000, Inc.
, 209 Ill. 2d 376, 384, 808 N.E.2d 957, 962 (2004).  The FAA provides: 

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2 (2000). 

In 
Doctor's Associates, Inc. v. Casarotto
, 517 U.S. 681, 685, 134 L. Ed. 2d 902, 907, 116 S. Ct. 1652, 1655 (1996), the United States Supreme Court further explained the preemptive effect of the FAA: 

" '[S]tate law, whether of legislative or judicial origin, is applicable 
if
 that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.  A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the text of §2].'  [Citation.]"  (Emphasis in original.)  

While the Supreme Court has stressed that federal policy under the FAA favors the enforcement of valid arbitration agreements (
Gilmer
, 500 U.S. at 24-25, 114 L. Ed. 2d at 36, 111 S. Ct. at 1651), the Court has been equally clear that a party can be forced into arbitration only if he or she has in fact entered into a valid, enforceable contract waiving his or her right to a judicial forum.  
AT&T Technologies, Inc. v. Communications Workers of America
, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 655, 106 S. Ct. 1415, 1418 (1986).  Whether the parties have agreed to arbitrate is determined under ordinary state-law contract principles.  
Penn v. Ryan's Family Steak Houses, Inc.
, 269 F.3d 753, 758-59 (7th Cir. 2001); 
Gibson v. Neighborhood Health Clinics, Inc.
, 121 F.3d 1126, 1130 (7th Cir. 1997).  The Supreme Court has confirmed that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]."  
Doctor's Associates, Inc.
, 517 U.S. at 687, 134 L. Ed. 2d at 909, 116 S. Ct. at 1656.  Here, the Customer Agreement contains a provision that any dispute between the parties would be resolved by binding arbitration.  As a result, the arbitration clause is enforceable unless Bess can show that grounds exist in Illinois law or in equity for the revocation of any contract.

Green Tree Financial Corp. v. Bazzle

After the trial court issued its decision, the United States Supreme Court released its decision in 
Green Tree Financial Corp. v. Bazzle
, 539 U.S. 444, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003).  The respondents in 
Green Tree Financial Corp.
 had obtained a home improvement loan from Green Tree Financial Corp. and had agreed, in the loan documents, to resolve any disputes by arbitration under the FAA.  Green Tree Financial Corp. apparently had failed to provide certain consumer notices, and the respondents thereafter sued Green Tree Financial Corp. in state court and asked the court to certify their claim as a class action.  Green Tree Financial Corp. moved to compel arbitration.  The trial court granted both motions, certified the class action, and compelled arbitration.  The arbitrator awarded more than $10 million to the class, which the trial court confirmed.  The South Carolina Supreme Court affirmed, holding that the loan documents were silent with respect to class arbitration and that they consequently authorized class-wide arbitrations.  
Bazzle v. Green Tree Financial Corp.
, 351 S.C. 244, 569 S.E.2d 349 (2002).  The United States Supreme Court granted 
certiorari
 to determine whether the holding of the South Carolina Supreme Court was consistent with the FAA.  Specifically, the Supreme Court addressed the decision ordering class arbitration under state law in the context of an arbitration agreement that was silent about whether class arbitration was forbidden or allowed (
in this case the arbitration agreement is silent about whether class arbitration was forbidden or allowed
).  After concluding that the agreement did not expressly forbid class arbitration, a plurality of the Court held:

"Under the terms of the parties' contracts, the question–whether the agreement forbids class arbitration–is for the arbitrator to decide.  The parties agreed to submit to the arbitrator '
[a]ll
 disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract.'  [Citation] (emphasis added).  And the dispute about what the arbitration contract in each case means (
i.e.
, whether it forbids the use of class arbitration procedures) is a dispute '
relating to this contract' and the resulting 'relationships.'  Hence the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question.  [Citation.]  And if there is doubt about that matter–about the ' "scope of arbitrable issues" '–we should resolve that doubt ' "in favor of arbitration." '  [Citation.] 

In certain limited circumstances, courts assume that the parties intended courts, not arbitrators, to decide a particular arbitration-related matter (in the absence of 'clea[r] and unmistakabl[e]' evidence to the contrary).  [Citation.]  These limited instances typically involve matters of a kind that 'contracting parties would likely have expected a court' to decide.  [Citation.]  They include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.  [Citations.]

The question here–whether the contracts forbid class arbitration–does not fall into this narrow exception.  It concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties.  *** [T]he question is not whether the parties wanted a judge or an arbitrator to decide 
whether they agreed to arbitrate the matter.
  [Citation.]  Rather the relevant question here is what 
kind of arbitration proceeding
 the parties agreed to.  That question does not concern a state statute or judicial procedures [citation].  It concerns contract interpretation and arbitration procedures.  Arbitrators are well situated to answer that question.  Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide.  [Citation.]"  (Emphasis in original.)  
Green Tree Financial Corp.
, 539 U.S. at 451-53, 156 L. Ed. 2d at 422-23, 123 S. Ct. at 2407 (plurality opinion).  

After the 
Green Tree Financial Corp. 
decision was announced, the American Arbitration Association Policy on Class Arbitration was revised and now reads:

"In its June 23, 2003[,] decision in 
Green Tree Financial Corp. v. Bazzle
, the United States Supreme Court held that where an arbitration agreement was silent regarding the availability of class-wide relief, an arbitrator, and not a court, must decide whether class relief is permitted.  Accordingly, the American Arbitration Association will administer demands for class arbitration pursuant to its Supplementary Rules for Class Arbitrations if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation[,] or joinder of claims."  Am. Arbitration Ass'n, Am. Arbitration Ass'n Policy on Class Arbitration (2004).  

Relying on 
Green Tree Financial Corp.
, we find that the arbitrator must decide whether "the applicable arbitration clause permits the arbitration to proceed on behalf of *** a class" (Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, R. 3, eff. October 8, 2003
(footnote: 1)).  If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, then the arbitrator must decide whether class arbitration is the best method to resolve the case.  We further note that in making the decision, the arbitrator must consider the criteria enumerated in rule 4 of the Supplementary Rules for Class Arbitrations.
(footnote: 2)  Having concluded that the failure to specifically provide for class actions does not render the Customer Agreement unconscionable and unenforceable, we turn to Bess's other contentions.

Bess asserts that the trial court failed to address her alternative arguments directed to the enforceability of the arbitration clause.  In the trial court Bess contended that  DirecTV's motion to compel arbitration should be denied for two reasons: (1) the arbitration provision is void because it is procedurally and substantively unconscionable, being a contract of adhesion and lacking mutuality of remedy while limiting remedies that would be available in Illinois courts, and (2) she did not voluntarily and knowingly waive her right to a trial by jury.  We agree that the trial court must render a "substantive disposition" of a motion to compel arbitration.  See 
Onni v. Apartment Investment & Management Co.
, 344 Ill. App. 3d 1099, 1101, 801 N.E.2d 586, 588 (2003); 
Cohen v. Blockbuster Entertainment, Inc.
, 338 Ill. App. 3d 171, 178, 787 N.E.2d 846, 851-52 (2003).  As stated in 
Onni
:

"In so holding, we note that section 2(a)'s directive [(710 ILCS 5/2(a) (West 2000))] that, when faced with a motion to compel arbitration, the trial court must proceed 'summarily to the determination of the issue so raised' in the motion does not compel or permit the trial court to rule on the motion in a conclusory manner, however much the word 'summarily' might suggest otherwise.  Rather, 'summarily,' as used in section 2(a), has been viewed as a directive 'that a trial court should act expeditiously and without a jury trial to determine whether a valid arbitration agreement exists.'  Uniform Arbitration Act (2000) §7, 7 U.L.A. 17 Comment (Supp. 2003); 
Grad v. Wetherholt Galleries
, 660 A.2d 903, 905 (D.C. 1995); 
Wallace v. Wiedenbeck
, 251 A.D.2d 1091, 1092, 674 N.Y.S.2d 230, 231 (1998); 
Burke v. Wilkins
, 131 N.C. App. 687, 688-89, 507 S.E.2d 913, 914 (1998); 
In re MHI Partnership, Ltd.
, 7 S.W.3d 918, 922 (Tex. Ct. App. 1999).  As was done in 
Comdisco
, we reverse the judgment of the trial court and remand this case for the trial court to render a 'substantive disposition' of defendants' motion to compel arbitration."  
Onni
, 344 Ill. App. 3d at 1105, 801 N.E.2d at 591.

Although the trial court thoughtfully addressed the first issue raised by Bess in opposition to DirecTV's motion to compel arbitration, it failed to consider the remaining issues raised by Bess.  As a result, we remand the case to the trial court to make a substantive determination of the remaining issues raised by Bess. 

Cause remanded.  

GOLDENHERSH and KUEHN, JJ., concur.

NO. 5-03-0290

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

CHARLOTTE BESS, )  Appeal from the 

)  Circuit Court of 

     Plaintiff-Appellee, )  St. Clair County.

)

)  No. 99-L-55A

)

DIRECTV, INC., )  Honorable

)  Robert P. LeChien,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: August 24, 2004

___________________________________________________________________________________

Justices
: Honorable James K. Donovan, J.

Honorable Richard P. Goldenhersh, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________________

Attorneys
 Joseph B. McDonnell, Greensfelder, Hemker & Gale, 12 Wolf Creek Drive, 

for
 Swansea, IL 62226; Steven E. Bledsoe, Stephen H. McClain, Kimberly Horsley,

Appellant
 Kirkland & Ellis, 777 South Figueroa Street, Los Angeles, CA 90017

___________________________________________________________________________________

Attorneys
 Steven Katz, Diane Moore Heitman, Korein Tillery, #10 Executive Woods Ct., 

for
 Belleville, IL 62226; Bradley J. Sylwester, The David Danis Law Firm, P.C., 8235

Appellee
 Forsyth Blvd., Suite 1100, St. Louis, MO 63105; Evan D. Buxner, Walther/Glenn

Law Associates, 1034 S. Brentwood, Suite 1300, St. Louis, MO 63117

___________________________________________________________________________________

FOOTNOTES
1:
"
3. Construction of the Arbitration Clause

Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award').  The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award.  Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award.  If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.

In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."  Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, R. 3, eff. October 8, 2003.  

2:
"
4. Class Certification 

(a) Prerequisites to a Class Arbitration 

If the arbitrator is satisfied that the arbitration clause permits the arbitration to proceed as a class arbitration, as provided in Rule 3, or where a court has ordered that an arbitrator determine whether a class arbitration may be maintained, the arbitrator shall determine whether the arbitration should proceed as a class arbitration.  For that purpose, the arbitrator shall consider the criteria enumerated in this Rule 4 and any law or agreement of the parties the arbitrator determines applies to the arbitration.  In doing so, the arbitrator shall determine whether one or more members of a class may act in the arbitration as representative parties on behalf of all members of the class described.  The arbitrator shall permit a representative to do so only if each of the following conditions is met: 

(1) the class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable; 

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; 

(4) the representative parties will fairly and adequately protect the interests of the class; 

(5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and 

(6) each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.

(b) Class Arbitrations Maintainable

An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied[] and[,] in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members[] and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: 

(1) the interest of members of the class in individually controlling the prosecution or defense of separate arbitrations; 

(2) the extent and nature of any other proceedings concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the determination of the claims in a single arbitral forum; and 

(4) the difficulties likely to be encountered in the management of a class arbitration."  Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, R. 4, eff. October 8, 2003.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/24/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.