(text box: 1) NO. 5-03-0774

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

DONNA M. KINKEL, Individually and on )  Appeal from the

Behalf of Others Similarly Situated, )  Circuit Court of

)  Madison County.

     Plaintiff-Appellee, )

)

)  No. 02-L-1087

) 

CINGULAR WIRELESS, LLC, )  Honorable 

)  Phillip J. Kardis,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, Cingular Wireless, LLC (Cingular), appeals an order denying its motion to compel arbitration and stay a class action suit against it pending arbitration.  We find that the arbitration clause itself is enforceable; however, we conclude that the clause's limitation on class arbitration is unconscionable and thus unenforceable.  Accordingly, we reverse and remand.

I. BACKGROUND

The defendant provides cellular telephone service.  Pursuant to its service agreement, customers agree to maintain service with Cingular for specified periods of time or "service terms."  If customers wish to cancel their service with Cingular prior to the end of their service term, the service agreement requires that they pay a $150 early-termination fee.  It is this fee that is at issue in the underlying action.  

The service agreement further provides as follows:

"
INDEPENDENT ARBITRATION
[.]  Please read this paragraph carefully.  It affects rights that you may otherwise have.  (a) CINGULAR and you shall use our best efforts to settle any dispute or claim arising from or relating to this Agreement. ***  If CINGULAR and you do not reach agreement within 30 days, instead of suing in court, CINGULAR and you agree to arbitrate any and all disputes and claims (including but not limited to claims based on or arising from an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement for products or service between you and CINGULAR ***.  ***  Except where prohibited by law, CINGULAR and you agree that no arbitrator has the authority to[] (1) award relief in excess of what this agreement provides[,] (2) award punitive damages or any other damages not measured by the prevailing party's actual damages[,] or (3) order consolidation or class arbitration.  The Arbitrator(s) must give effect to the limitations on CINGULAR's liability as set forth in this agreement, any applicable tariff, law, or regulation.  ***  Notwithstanding the foregoing, either party may bring an action in small claims court."

Despite the language admonishing customers to "read this paragraph," the arbitration clause does not form a separate paragraph.  Rather, it is contained in the middle of a long paragraph at the bottom of the 8- by 14-inch "TERMS AND CONDITIONS" page.

In July 2001, the plaintiff, Donna M. Kinkel, began receiving cellular service from the defendant.  She chose a two-year service commitment, which meant that her service term was to end in July 2003.  In April 2002, she notified the defendant that she wished to terminate her service.  The defendant charged her the early-termination fee of $150, which she paid under protest.  

On August 8, 2002, the plaintiff filed a class action lawsuit against the defendant, alleging that the early-termination fee constitutes both a breach of the service agreement and statutory fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 
et seq.
 (West 2002)).  On September 9, 2002, the cause was removed to federal court; however, on November 8, 2002, it was remanded to the trial court.  On May 21, 2003, the defendant filed a motion to compel arbitration and stay the litigation.  On September 11, 2003, the plaintiff filed her first amended complaint, and on September 12, the defendant filed a renewed motion to compel arbitration.  

On October 28, 2003, the court held a hearing on the defendant's motion to compel arbitration, which it denied in a written order entered on November 10, 2003.  The court found that the dispute at issue does not fall within the scope of the arbitration clause in the service agreement because (1) the plaintiff's complaint alleges fraud, to which this court found appraisal clauses to be inapplicable in 
Hanke v. American International South Insurance Co.
, 335 Ill. App. 3d 1164, 782 N.E.2d 328 (2002), and 
Travis v. American Manufacturers Mutual Insurance Co.
, 335 Ill. App. 3d 1171, 782 N.E.2d 322 (2002), (2) the parties could not have intended the arbitration clause to apply to the instant dispute due to the fact that it purports to limit the authority of arbitrators to award relief that would be available under the Consumer Fraud Act, and (3) the fact that the agreement allows claims such as the plaintiff's to be brought in small claims court indicates that the parties intended for those claims to be resolved by litigation.  The court further found that the arbitration clause was unenforceable because (1) without the right to recover costs and attorney fees, the individual arbitration of claims such as the plaintiff's would be prohibitively expensive, (2) the clause purports to preclude relief available under the Consumer Fraud Act, and (3) the clause is unconscionable.  The defendant filed a notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)) on December 9, 2003.

II. ANALYSIS

We first consider the defendant's contention that the trial court improperly found that the instant dispute does not fall within the scope of the arbitration provision in its service agreement with the plaintiff.  Our review is 
de novo
.  See 
Zobrist v. Verizon Wireless
, 354 Ill. App. 3d 1139, 1142, 822 N.E.2d 531, 536 (2004).  

The defendant contends that the court below incorrectly concluded that our prior holdings in 
Hanke
 and 
Travis
 require a finding that the arbitration clause is inapplicable to a case involving allegations of fraud.  Both 
Hanke
 and 
Travis
 revolved around the applicability of appraisal clauses in automobile insurance policies.  Although this distinction alone does not render them 
per se
 inapplicable (see 
Travis
, 335 Ill. App. 3d at 1174, 782 N.E.2d at 324 (noting that appraisal clauses are enforceable in the same manner as arbitration clauses)), we agree with the defendant that they are distinguishable from the present case.  In both 
Hanke
 and 
Travis
, the plaintiffs argued, much as the plaintiff does here, that the appraisal clauses at issue were a part of a fraudulent scheme under which the defendant insurers underestimated the value of the total loss of insured vehicles.  
Hanke
, 335 Ill. App. 3d at 1169, 782 N.E.2d at 332; 
Travis
, 335 Ill. App. 3d at 1173, 782 N.E.2d at 324.  Each insurance contract contained a clause providing that, in the event of a dispute over the value of the total loss of an insured vehicle, the parties would submit that dispute to an appraisal.  
Hanke
, 335 Ill. App. 3d at 1166, 782 N.E.2d at 329-30; 
Travis
, 335 Ill. App. 3d at 1173, 782 N.E.2d at 324.  In each case, we held that the plaintiff's claim under the Consumer Fraud Act was beyond the scope of the appraisal clause.  

In neither case was the plaintiff's allegation that the appraisal clause was a part of a fraudulent scheme central to our holding.  In each case, we found that a resolution of the issues involved in the plaintiff's claims required far more than a determination of the actual cash value of the vehicles.  Thus, we concluded that the issues could not be resolved through the appraisal process.  
Hanke
, 335 Ill. App. 3d at 1169, 782 N.E.2d at 332; 
Travis
, 335 Ill. App. 3d at 1177, 782 N.E.2d at 327.  In 
Travis
, we further explained that the plaintiff's claims required a determination of whether the defendant had defrauded her and breached the terms of her insurance policy.  
Travis
, 335 Ill. App. 3d at 1177, 782 N.E.2d at 327.  Those determinations were beyond the scope of the appraisal clause, which was applicable, by its terms, only to disputes over the value of the insured vehicle.  

Here, by contrast, the arbitration clause states that it applies to "any and all disputes" arising from the service agreement, which is clearly broader than the appraisal clauses at issue in 
Hanke
 and 
Travis
.  Moreover, the appraisal process itself is not designed to answer questions of contract interpretation, while arbitrators are generally empowered to decide in the more informal context of arbitration the same types of questions courts regularly decide.  See 
Green Tree Financial Corp. v. Bazzle
, 539 U.S. 444, 453, 156 L. Ed. 2d 414, 423, 123 S. Ct. 2402, 2407 (2003) (plurality opinion) (noting that arbitrators are "well situated" to answer questions of contract interpretation); 
Lundy v. Farmers Group, Inc.
, 322 Ill. App. 3d 214, 219, 750 N.E.2d 314, 319 (2001) (explaining that an interpretation of contractual language "cannot be resolved through the appraisal process"); 15 Couch on Insurance 3d §209:8 (1999) (noting the difference in scope between arbitration clauses and appraisal clauses).

This does not end our inquiry.  Whether a dispute falls within the scope of an arbitration clause depends upon the language of the contract.  
Zobrist
, 354 Ill. App. 3d at 1143, 822 N.E.2d at 537.  Ordinarily, the arbitrability of a given issue is for courts, not arbitrators, to determine.  
Zobrist
, 354 Ill. App. 3d at 1144, 822 N.E.2d at 538.  There are, however, exceptions to this general rule.  When the language of the agreement is clear and it is apparent from that language that the dispute is covered by the arbitration clause, courts can determine the issue and compel arbitration.  Similarly, if it is apparent that the claim is not subject to the arbitration provision, courts may conclude that arbitration should not be compelled.  
Zobrist
, 354 Ill. App. 3d at 1144, 822 N.E.2d at 538.  Where there is some question regarding the arbitrability of a given dispute, the question should be decided initially by an arbitrator.  
Zobrist
, 354 Ill. App. 3d at 1145, 822 N.E.2d at 538.  This is because matters of contract interpretation are arbitrable under broad arbitration clauses such as the one here at issue.  
Bess v. DirecTV, Inc.
, 351 Ill. App. 3d 1148, 1153-54, 815 N.E.2d 455, 459-60 (2004) (relying on 
Green Tree Financial Corp.
, 539 U.S. at 453, 156 L. Ed. 2d at 423, 123 S. Ct. at 2407 (plurality opinion)).  

Here, the arbitration clause contains very broad language.  In 
Zobrist
, we considered a similarly broad arbitration provision.  There, we found that, while it was clear the arbitration provision applied to a breach-of-contract claim, there was at least some question about whether the provision also encompassed a statutory-fraud claim.  
Zobrist
, 354 Ill. App. 3d at 1146, 822 N.E.2d at 539.  We reach the same conclusion in this case.  The trial court found bases to conclude that the instant dispute is beyond the scope of the arbitration provision by construing the service agreement as a whole.  Specifically, the court looked to the clause providing that either party may pursue a claim in small claims court and the provisions purporting to limit the arbitrator's authority to grant relief available under the Consumer Fraud Act, such as punitive damages.  The court reasoned that the clause permitting consumers to bring actions in small claims court demonstrated an intent that claims such as the plaintiff's would be litigated rather than arbitrated.  The court further reasoned that the language limiting Cingular's liability to eliminate relief available under the Consumer Fraud Act meant that the parties must have intended that those claims would be resolved through litigation.  

With respect to the court's conclusion that the provision permitting small claims actions demonstrates an intent that claims such as the plaintiff's be litigated, we recently rejected an identical argument in 
Zobrist
.  There, we found that, even assuming a plaintiff could bring a class action in small claims court, the fact that she had chosen to bring the action in the law division of a court of general jurisdiction took her complaint out of the small-claims-court exception contained in the relevant arbitration clause.  
Zobrist
, 354 Ill. App. 3d at 1150, 822 N.E.2d at 542-43. 

With respect to the court's findings regarding the limitations on remedies, it is not entirely clear from the contract whether the relevant language is intended to limit Cingular's liability regardless of the forum in which any dispute is resolved or whether it is meant only to limit the authority of an arbitrator to award relief that would otherwise be available.  We need not resolve any of these questions, however.  As we have explained, these matters of contract interpretation are for an arbitrator to decide initially.  See 
Ragan v. AT&T Corp.
, ___ Ill. App. 3d ___, ___, 824 N.E.2d 1183, 1194 (2005) (finding the effect of purported remedial limitations to be an issue of contract interpretation to be decided initially by an arbitrator); see also 
Zobrist
, 354 Ill. App. 3d at 1146, 822 N.E.2d at 539; 
Bess
, 351 Ill. App. 3d at 1154-55, 815 N.E.2d at 460.

We next turn to the defendant's argument that the court erred by concluding that the arbitration clause was unenforceable.  We find that the arbitration clause as a whole is enforceable.  We find, however, that the prohibition on class arbitration is unconscionable and therefore unenforceable. 

Unconscionability has two components: procedural and substantive.  A contract provision is procedurally unconscionable if some impropriety in the formation of the contract leaves a party with no meaningful choice in the matter.  A provision is substantively unconscionable if it is overly harsh or one-sided.  
Zobrist
, 354 Ill. App. 3d at 1147, 822 N.E.2d at 540.  In order to be unconscionable, a contract provision must be both procedurally and substantively unconscionable.  
Zobrist
, 354 Ill. App. 3d at 1147, 822 N.E.2d at 540.  In 
Zobrist
, this court stated that claims of unconscionability should be analyzed using the sliding scale utilized by the Ninth Circuit Court of Appeals in 
Ting v. AT&T
, 319 F.3d 1126 (9th Cir. 2003).  Under 
Ting
, if a provision is extremely substantively unconscionable, it need only be slightly procedurally unconscionable, and vice versa.  
Ting
, 319 F.3d at 1148 (relying on 
Armendariz v. Foundation Health Psychcare Services, Inc.
, 24 Cal. 4th 83, 114, 6 P.3d 669, 690, 99 Cal. Rptr. 2d 745, 767-68 (2000)).  In 
Zobrist
, we found the provision at issue to be neither procedurally nor substantively unconscionable, and therefore we did not apply the 
Ting
 sliding scale to the provision that was at issue there.  
Zobrist
, 354 Ill. App. 3d at 1150, 822 N.E.2d at 542.  For the reasons that follow, we find the provision here at issue to be both procedurally and substantively unconscionable and now adopt the 
Ting
 scale we approved in 
Zobrist
.

In 
Zobrist
, we noted that the fact that a contract is offered in a form contract on a take-it-or-leave-it basis does not automatically render a contract term procedurally unconscionable.  
Zobrist
, 354 Ill. App. 3d at 1148, 822 N.E.2d at 541.  This, of course, does not mean that offering a contract term on a take-it-or-leave-it basis is irrelevant in determining whether a contract provision is procedurally unconscionable; indeed, it is an important factor to consider.  See 
Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.
, 86 Ill. App. 3d 980, 990, 408 N.E.2d 403, 410 (1980) (noting that "both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive[,] factors").  It simply means that something more is required before we find a provision to be procedurally unconscionable.  Illinois courts have long found provisions offered on a take-it-or-leave-it basis and also "hidden in a maze of fine print" to be procedurally unconscionable.  
Frank's Maintenance & Engineering, Inc.
, 86 Ill. App. 3d at 989-90, 408 N.E.2d at 410.  

In 
Frank's Maintenance & Engineering, Inc.
, the court explained that, in order to be a part of the parties' bargain, a contract provision must be "bargained for, brought to the [consumer's] attention[,] or *** conspicuous."  
Frank's Maintenance & Engineering, Inc.
, 86 Ill. App. 3d at 990, 408 N.E.2d at 410.  The arbitration clause in Cingular's service agreement could not be less conspicuous.  As noted, it appears in the middle of a long paragraph at the bottom of the terms-and-conditions page on the back of the service agreement.  The arbitration clause is one of five clauses appearing in the same paragraph.  The terms and conditions are printed on an 8- by 14-inch page containing 123 lines of tiny single-spaced text.  By way of comparison, an 8- by 14-inch page contains 61 lines of 12-point single-spaced text.  Although the heading "Independent Arbitration" appears in a bold typeface and all-capital letters, this provides far less visual emphasis than might be the case with larger print.  The print is so small that it seems highly unlikely that any consumer would read the entire terms-and-conditions page.  Because words cannot adequately portray the onerous undertaking that would be involved if a consumer attempted to read the entire page, we have chosen to include the page in question as an exhibit.

The defendant contends that the provision was, nevertheless, brought to the plaintiff's attention by a statement printed near the top of the introductory paragraph of the terms-and-conditions page that states, "IMPORTANT NOTICE: THIS AGREEMENT CONTAINS MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE.  PLEASE REFER TO THE SECTION ENTITLED 'ARBITRATION' FOR DETAILS."  Again, due to the minuscule typeface, the capital letters provide far less emphasis than they otherwise might.  Moreover, even if we were to find this statement sufficient to warrant a conclusion that the arbitration provision as a whole was conspicuous or brought to the plaintiff's attention, it does nothing to bring the provision barring class arbitration to her attention.  The provision was offered to the plaintiff on a take-it-or-leave-it basis hidden in a maze of fine print where it was unlikely to be noticed, much less read.  This is sufficient for a finding of procedural unconscionability.

The trial court found the arbitration provision to be substantively unconscionable both because it precludes class relief and because it limits the authority of arbitrators to award relief provided for under the Consumer Fraud Act.  As noted, the effect of the provisions purporting to limit the authority of arbitrators to award punitive damages and other damages "not measured by the prevailing party's actual damages" is a matter of contract interpretation to be decided by an arbitrator.  Thus, we cannot decide at this time whether this provision is enforceable.  We note that in remanding the cause for arbitration, we are staying, not dismissing, the plaintiff's lawsuit.  See 
Ragan
, ___ Ill. App. 3d at ___, 824 N.E.2d at 1194.

We also find the prohibition of class arbitration to be substantively unconscionable.  The most that the plaintiff or any other similarly situated consumer could hope to recover in an action of this nature is $150.  The cost of retaining an attorney and filing an individual claim 
either
 in court or before an arbitrator would exceed the potential recovery.  Filing an individual claim in small claims court would be nearly as unhelpful.  The cost of filing alone would offset a significant portion of any potential recovery, which would be further offset by any costs incurred in presenting the claim and any lost wages for taking time from work to do so.  In essence, consumers in the plaintiff's position are left without an effective remedy in the absence of a mechanism for class arbitration or litigation.  Thus, this case presents "the classic class action lawsuit in which those allegedly injured would be economically prohibited from ever vindicating their rights in separate lawsuits."  
Hanke
, 335 Ill. App. 3d at 1170, 782 N.E.2d at 333; see also 
Deposit Guaranty National Bank v. Roper
, 445 U.S. 326, 339, 63 L. Ed. 2d 427, 440, 100 S. Ct. 1166, 1174 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"); 
Leonard v. Terminix International Co., L.P.
, 854 So. 2d 529, 536 (Ala. 2002) (noting the "plentiful *** cases from the United States Supreme Court recognizing the importance of relief by way of a class action").  

Not only does the prohibition effectively preclude consumers from seeking remedies, the limitation is one-sided.  We find the well-reasoned opinion of the California Court of Appeal in 
Szetela v. Discover Bank
, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (2002), persuasive in this regard.  There, consumers brought a putative class action alleging that their credit card company had breached its contract with them and engaged in fraud by improperly charging them a fee of $29 for exceeding their credit limits.  
Szetela
, 97 Cal. App. 4th at 1097, 118 Cal. Rptr. 2d at 864-65.  One of the named plaintiffs appealed a trial court order granting the credit card company's motion to compel arbitration.  He argued that the provision against class actions was unconscionable.  
Szetela
, 97 Cal. App. 4th at 1099, 118 Cal. Rptr. 2d at 866.  The court agreed, explaining, "The manifest one-sidedness of the no[-]class[-]action provision at issue here is blindingly obvious."  
Szetela
, 97 Cal. App. 4th at 1100, 118 Cal. Rptr. 2d at 867.  The court went on to explain:

"Although styled as a mutual prohibition on representative or class actions, it is difficult to envision the circumstances under which the provision might negatively impact Discover, because credit card companies typically do not sue their customers in class action lawsuits.  This provision is clearly meant to prevent customers, such as Szetela and those he seeks to represent, from seeking redress for relatively small amounts of money, such as the $29 sought by Szetela.  Fully aware that few customers will go to the time and trouble of suing in small claims court, Discover has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights."  
Szetela
, 97 Cal. App. 4th at 1101, 118 Cal. Rptr. 2d at 867.

Similarly, cellular telephone service providers typically do not sue their customers in class action lawsuits.  Thus, Cingular's provision barring class arbitrations is a one-sided limitation on its customers' ability to seek relief for claims where damages are quite low.  We agree with the 
Szetela
 court that such a one-sided limitation that could effectively deny plaintiffs their day in court is substantively unconscionable.

The defendant argues that finding the prohibition on class arbitrations unconscionable would effectively eliminate the benefits of the streamlined process of arbitration.  We disagree.  Cingular's service agreement provides that disputes are to be arbitrated with the American Arbitration Association pursuant to its Wireless Industry Arbitration rules.  The American Arbitration Association has promulgated procedures for class arbitrations.  Those procedures include a procedure for an arbitrator to determine whether class arbitration is the best way to proceed in the given case.  See 
Bess
, 351 Ill. App. 3d at 1155 n.2, 815 N.E.2d at 460 n.2 (quoting Am. Arbitration Ass'n, Supplementary Rules for Class Arbitrations, R. 4, eff. October 8, 2003).  While it is undoubtedly true that arbitrating the plaintiff's claim as a class arbitration will be more involved than arbitrating her claim alone on an individual basis, it may in fact be far more convenient and efficient to handle a class arbitration than to arbitrate her claim and perhaps thousands of identical claims through duplicative individual arbitration proceedings.  Moreover, as noted, arbitrators have the authority to decide whether a single class arbitration is more convenient and efficient than handling hundreds or thousands of identical individual arbitrations. 

The defendant also contends that the United States Supreme Court suggested in 
dicta
 in 
Gilmer v. Interstate/Johnson Lane Corp.
, 500 U.S. 20, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991), that prohibitions on class arbitrations would be enforceable.  There, a financial services manager argued that his claim under the Age Discrimination in Employment Act of 1967 (the ADEA) (29 U.S.C. §621 
et seq.
 (1988)) could not be arbitrated due to several asserted inadequacies of the arbitration process to resolve such claims.  
Gilmer
, 500 U.S. at 30, 114 L. Ed. 2d at 39, 111 S. Ct. at 1654.  One argument was that arbitration procedures could not adequately further the ADEA's purposes because they did not provide for class actions.  The Court rejected this argument because the arbitration procedures applicable to Gilmer's dispute in fact 
did
 allow for class arbitrations.  
Gilmer
, 500 U.S. at 32, 114 L. Ed. 2d at 41, 111 S. Ct. at 1655.  

As the defendant notes, however, the Court also stated, " '[E]ven if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.' "  
Gilmer
, 500 U.S. at 32, 114 L. Ed. 2d at 41, 111 S. Ct. at 1655 (quoting 
Nicholson v. CPC International, Inc.
, 877 F.2d 221, 241 (3d Cir. 1989)).  Our conclusion does not contravene this observation.  For one thing, the Court addressed a question different from the one facing us here–
i.e.
, whether mandatory arbitration is inherently inconsistent with the purposes of the ADEA.  
Gilmer
, 500 U.S. at 26-27, 114 L. Ed. 2d at 37, 111 S. Ct. at 1652.  It is one thing to say that a particular arbitration clause or portion thereof is unconscionable; it is another thing to say that arbitration is inconsistent with the purposes of an entire statutory scheme.  

Significantly, the Court found that the ADEA's broad purpose of "further[ing] important social policies" (
Gilmer
, 500 U.S. at 27, 114 L. Ed. 2d at 38, 111 S. Ct. at 1653) could be achieved even through individual arbitrations in part because private arbitration agreements would not preclude the Equal Employment Opportunity Commission from bringing actions seeking class-wide relief.  
Gilmer
, 500 U.S. at 32, 114 L. Ed. 2d at 41, 111 S. Ct. at 1655.  Also worth noting is the fact that Gilmer's suit was not a putative class action; therefore, whether an individual litigant could realistically obtain relief without the ability to seek class relief was not at issue.  Claims such as Gilmer's are not as small as claims such as the plaintiff's.  The ability to bring a class action in Gilmer's situation was thus not as critical as it is in the consumer context.  We read the Court's statement to indicate only that the Court would approve an arbitration provision in an employment contract even if the arbitral forum chosen does not have a mechanism for allowing class arbitrations.  That is a far cry from approving a provision imposing limits on the type of relief otherwise available in the chosen arbitral forum when doing so could realistically preclude relief.

Further, the defendant urges us to follow the First District's decisions in 
Rosen v. SCIL, LLC
, 343 Ill. App. 3d 1075, 799 N.E.2d 488 (2003), and 
Hutcherson v. Sears Roebuck & Co.
, 342 Ill. App. 3d 109, 793 N.E.2d 886 (2003).  We find those cases distinguishable and not persuasive on this issue.  In each case, the First District of the Illinois Appellate Court held that a prohibition on class arbitration was not unconscionable.  
Rosen
, 343 Ill. App. 3d at 1082, 799 N.E.2d at 494; 
Hutcherson
, 342 Ill. App. 3d at 124, 793 N.E.2d at 896.  The arbitration clause at issue in each case provided that the defendant creditor would advance any arbitration fees required to be paid by the plaintiff consumer (in 
Rosen
, the clause only provided that the creditor would advance the amount of any arbitration fees in excess of what it would cost the consumer to bring the action in court instead of in arbitration).  Each contract required the consumer to request in writing that the creditor advance these fees.  Each contract further provided that the consumer would only be required to repay these expenditures if an arbitrator determined that the consumer was required to do so (in 
Hutcherson
, the consumer could only be required to repay the creditor if the arbitrator found that the claim was frivolous; in 
Rosen
, it is not clear what grounds were to be used in the decision).  
Rosen
, 343 Ill. App. 3d at 1078, 799 N.E.2d at 491; 
Hutcherson
, 342 Ill. App. 3d at 122, 793 N.E.2d at 895.  The court noted that this factor was important to its decision, as was the policy in favor of enforcing arbitration agreements.  
Hutcherson
, 342 Ill. App. 3d at 122-24, 793 N.E.2d at 895-96; see 
Rosen
, 343 Ill. App. 3d at 1082, 799 N.E.2d at 494.

We need not determine whether we would reach the same conclusion as the First District, were we presented with a similar provision.  The instant case does not involve a similar provision.  A subsequent amendment to the service agreement does contain a similar provision, however, and Cingular has offered to apply the new provision to the plaintiff retroactively.  It is not clear that this offer applies to those the plaintiff seeks to represent, however.  Thus, giving Cingular the benefit of a piecemeal reworking of the contract that was in effect when the plaintiff cancelled her service would not meet the ends of justice.  As the Third Circuit Court of Appeals observed when confronted with a similar argument, the party who drafted the arbitration agreement "is saddled with the consequences of the provision 
as drafted
."  (Emphasis in original.)  
Spinetti v. Service Corp. International
, 324 F.3d 212, 217 n.2 (3d Cir. 2003).

Finally, the defendant argues that a conclusion that the prohibition of class arbitration is unconscionable runs afoul of section 2 of the Federal Arbitration Act (the FAA) (9 U.S.C. §2 (2000)).  That section provides that arbitration agreements are enforceable except on "such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2 (2000).  The United States Supreme Court has held that the FAA precludes state law contract defenses that are applicable only to arbitration clauses.  
Doctor's Associates, Inc. v. Casarotto
, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 909, 116 S. Ct. 1652, 1656 (1996).  The defendant correctly points out that no prior case in Illinois has found a limitation on class actions to be unconscionable outside of the context of arbitration agreements.  Therefore, the defendant argues, we are not merely applying an already existing state law contract defense to the provision here at issue, as sanctioned in 
Casarotto
.  This argument is without merit.  The contract defense of unconscionability is not new.  We would find a limitation on class actions in consumer actions such as this to be substantively unconscionable in the absence of an arbitration clause as well.  The purpose of the FAA was to reverse a previous judicial hostility towards arbitration agreements and place them on "the same footing" as other contracts.  
Gilmer
, 500 U.S. at 24, 114 L. Ed. 2d at 36, 111 S. Ct. at 1651.  We do not think Congress intended the FAA to insulate any provision from being found unconscionable if the precise issue happens to arise for the first time in the context of an arbitration clause.  

We conclude that the prohibition on class arbitrations is unconscionable.  The question remains whether the remainder of the arbitration clause should be enforced.  We find persuasive the defendant's argument that the remainder of the clause can be severed from the unconscionable provision.  

In determining whether it is appropriate to sever an unconscionable provision from an agreement and enforce the remainder of the agreement, Illinois courts are to consider whether the provisions operate independently of each other or whether the valid provisions are "so closely connected with unenforceable provisions that to do so would be tantamount to rewriting the Agreement."  
Abbott-Interfast Corp. v. Harkabus
, 250 Ill. App. 3d 13, 21, 619 N.E.2d 1337, 1344 (1993).  Here, the provision requiring the arbitration of disputes does not depend for its efficacy upon the provision barring class relief.  The claim can still be arbitrated if the arbitrator is free to determine that class arbitration is appropriate.  

Further, courts are to consider whether the agreement has a severability clause.  
Harkabus
, 250 Ill. App. 3d at 21, 619 N.E.2d at 1343.  The service agreement in the instant case provides, "If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions remain in full force and effect."  Such a provision indicates that the parties intended for the valid portions of the contract to remain in effect even in the absence of any unenforceable provisions.  
Harkabus
, 250 Ill. App. 3d at 21, 619 N.E.2d at 1343.  

Moreover, we must keep in mind the strong policy in favor of enforcing arbitration agreements, which is best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision.  See 
Spinetti
, 324 F.3d at 220-21 (explaining that in a legal climate where the permissible bounds of mandatory arbitration agreements are being determined, if courts " 'were to hold entire arbitration agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA *** for fear that minor terms eventually could be used to undermine the validity of the entire contract' " (quoting 
Gannon v. Circuit City Stores, Inc.
, 262 F.3d 677, 682 (8th Cir. 2001))).  We therefore conclude that the arbitration provision can be enforced absent the unconscionable ban on class arbitrations.

III. CONCLUSION

For the foregoing reasons, we reverse the order of the trial court denying the defendant's motion to compel arbitration and stay the plaintiff's lawsuit.  We remand for further proceedings consistent with this opinion.

Reversed; cause remanded.

DONOVAN, P.J., and KUEHN, J., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 05/02/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.